Allan H. Treman and Pauline Bird Treman v. Commissioner.
Allan H. Treman & Pauline Bird Treman v. Commissioner
Docket No. 41520.
United States Tax Court
1953 Tax Ct. Memo LEXIS 168; 12 T.C.M. (CCH) 845; T.C.M. (RIA) 53256; July 27, 1953
L. Nelson Simmons, Esq., for the petitioners. A. W. Dickinson, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $830.91 for 1947 against Allan and deficiencies of $2,760.52 and $1,590.70 for 1948 and 1949 against both petitioners. The issue for decision is whether the Commissioner erred in disallowing deductions of $3,875 for 1947, $10,875 for 1948 and $6,000 for 1949 based upon loans made to Crown Point Forest Products Corporation, hereafter called Crown Point. Findings of Fact The petitioners are husband and wife and Allan is hereafter called the petitioner. The returns for the taxable years were filed with the collector of internal revenue at Syracuse, New York. The petitioner is *169 a lawyer who has been practicing in Ithaca, New York, since September 15, 1924. He was employed in July 1946 to represent Ross L. Coleman who had an option to buy a large lumber mill at Crown Point, New York, for about $600,000. The petitioner examined the title to the property and the property was purchased on September 11, 1946 for Crown Point, all of the stock of which was owned at all times material hereto by Coleman. Manufacturers Discount Corporation loaned money for the purchase secured by a mortgage on the property. Crown Point encountered serious financial difficulties which became steadily worse. The mortgage threatened foreclosure and a 77B reorganization was attempted unsuccessfully. Unsuccessful efforts were made to obtain an R.F.C. loan. The petitioner was spending much of his time trying to help Crown Point to obtain a satisfactory loan and to obtain profitable outlets for its products. Coleman requested the petitioner to help in the emergency by lending some money to Crown Point to avoid bankruptcy and the petitioner on various dates from February 11, 1947 to May 2, 1947 loaned Crown Point a total of $47,500. No note or other evidence of the loans was given. The *170 petitioner expected to become attorney for Crown Point at a substantial salary if it became successful. He never received any repayment of the loans or any compensation for his services to Crown Point. The petitioner was not engaged during the taxable years in any business of lending money or of organizing or aiding corporations or other business organizations. An involuntary petition in bankruptcy was filed against Crown Point after June 1947. The petitioner filed claims in the bankruptcy proceeding in January 1948 for the amounts he had loaned Crown Point and for compensation for his services; the claims were accepted by the referee, but no funds ever became available to pay the claims. The Commissioner, in determining the deficiencies, disallowed deductions for bad debts of $3,875 for 1947, $10,875 for 1948 and $6,000 for 1949 and explained that the loss sustained by the petitioner in connection with the advances made to Crown Point represented "a non-business bad debt loss sustained in the year 1949" and must be treated as a short term capital loss allowable only to the extent of $1,000, in the absence of capital gains, and was allowable for 1949 only to the extent of $800 *171 because another short term capital loss for that year of $200 was claimed and allowed. The stipulation of facts is incorporated herein by this reference. Opinion MURDOCK, Judge: The record shows clearly that the petitioner loaned the $47,000 to Crown Point and, consequently, his case must rest upon a claim for deduction for a bad debt under section 23 (k) rather than for any deduction under section 23 (e). . The Commissioner has determined that the debts became worthless in 1949 and the record does not justify a finding that any part of the debts became worthless earlier. The Commissioner has determined that the debt was a non-business debt within the meaning of section 23 (k) (4) which provides that such debts becoming worthless shall be treated as short term capital losses. It defines a non-business debt as "a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business." No evidence of these debts was given by the debtor, so the petitioner offered evidence apparently intended to show *172 that the worthlessness was incurred in some trade or business of the petitioner. That evidence shows that the petitioner, during a period of about twenty-five years, had been interested in a few corporations or other business organizations and had loaned undisclosed amounts to some of them. That evidence does not show that the petitioner was engaged in any business of which these loans to Crown Point were a part. ; Charles G. Berwind, 20 T.C. (July 9, 1953). The case of , cited by the petitioner, involved facts different from those here present and has been reversed by the Court to which this case would go if appealed, . Decision will be entered for the respondent.